[Cite as *State v. Wallace*, 2024-Ohio-4955.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-09-059 |
| and | : | O P I N I O N |
| I.W., | : | 10/14/2024 |
| Appellant, | : | |
| | : | |
| - vs - | : | |
| | : | |
| RACHEL WALLACE, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2023-CRB-000663

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee, State of Ohio.

Ostrowski Law Firm Co., L.P.A., and Andrea G. Ostrowski, for appellant.

Jeff Meadows, for appellee, Rachel Wallace.

**BYRNE, P.J.**

{¶ 1} In this interlocutory victim's rights appeal, an alleged child victim appeals the Warren County Court's denial of the child's request to appear remotely as a witness

at trial.

{¶ 2} The defendant in this case, Rachel Wallace, was charged with (1) one count of domestic violence against her ex-spouse and (2) one count of child endangering involving the former couple's child, the alleged child victim herein, "I.W." Prior to the trial date, counsel for the child victim filed a timely motion requesting the child's trial testimony be given pursuant to R.C. 2945.481(C)(1)(a). This provision allows a child victim to testify in a room other than the one in which the proceeding is conducted, with that testimony broadcast into the room in which the proceeding is being conducted. The motion alleged that the child victim was under the age of 13 and that the defendant was charged with child endangering, one of the offenses that allows such testimonial protections to the victim.

{¶ 3} The state and Wallace did not oppose the child victim's motion. The trial court, however, denied the motion. It found that R.C. 2945.481(C)(2) and (E) required the court to find that the child witness was "unavailable" before granting the request for remote testimony under R.C. 2945.481(C)(1)(a). The court, citing the Ohio Supreme Court's decision in *State v. Carter*, 2024-Ohio-1247, concluded that "notwithstanding the mandatory language of [Division (C)(1)], a showing of necessity is constitutionally required" and that Division (C)(2) "provides the framework from which to make the determination of necessity." Because the court further concluded that "the child is not 'unavailable' for any of the reasons set forth in" Division (E), the court found it was "not necessary to have the child testify outside the Courtroom, or outside the presence of Defendant." The court therefore denied the child victim's motion to testify remotely.

{¶ 4} The child victim filed this appeal pursuant to Marsy's Law and R.C. 2930.19(A)(2)(b), which allow crime victims to appeal, on an interlocutory basis, the trial court's purported denial of an alleged crime victim's rights.

- 2 -

{¶ 5} On appeal, the child victim raises one assignment of error for our review:

THE TRIAL COURT ERRED IN DENYING THE CHILD VICTIM'S MOTION TO TESTIFY REMOTELY.

{¶ 6} As mentioned above, the child victim's motion to testify remotely was filed pursuant to R.C. 2945.481(C)(1). In its entirety, this provision states the following:

(a) In any proceeding in the prosecution of any charge of a violation listed in division (A)(2)(a) of this section or an offense of violence and in which an alleged victim of the violation or offense was a child who was less than thirteen years of age when the complaint, indictment, or information was filed, whichever occurred earlier, the judge, upon motion of the prosecution, the child victim, or the child victim's attorney, if applicable, shall order the testimony of the child victim to be taken in a room other than the room in which the proceeding is being conducted and be broadcast into the room in which the proceeding is being conducted to be viewed by the jury, if applicable, the defendant, and any other persons who are not permitted in the room in which the testimony is to be taken but who would have been present during the testimony of the child victim had it been given in the room in which the proceeding is being conducted.

(b) In any proceeding that is not otherwise eligible for the protections provided for in division (C)(1)(a) of this section, and in which an alleged victim of the violation was a child who was less than eighteen years of age when the complaint, indictment, or information was filed, whichever occurred earlier, upon motion of the child victim, the child victim's attorney, if applicable, or the prosecution, and upon a showing by a preponderance of the evidence that the child will suffer serious emotional trauma if required to provide live trial testimony, the judge shall order that the testimony of the child victim be taken in a room other than the room in which the proceeding is being conducted and broadcast into the room in which the proceeding is being conducted to be viewed by the defendant who is charged with the violation or act and any other persons who are not permitted in the room in which the testimony is to be taken but who would have been present during the testimony of the child victim had it been given in the room in which the proceeding is being conducted.

{¶ 7} The victim's motion stated that it was filed pursuant to Division (C)(1)(a)

above, that the child was under 13 years old, and that the defendant was charged with child endangering, one of the offenses specified in Division (A)(2)(a) referenced in Division (C)(1)(a). The trial court denied the motion, however, based in part on Division(C)(2), which states:

> Except for good cause shown, the prosecution, child victim, or child victim's attorney, if applicable, shall file a motion under this division at least seven days before the date of the proceeding. *The judge may issue the order upon the motion of the prosecution, child victim, or child victim's attorney, if applicable, filed under this section, if the judge determines that the child victim is unavailable to testify in the room in which the proceeding is being conducted in the physical presence of the defendant, for one or more of the reasons set forth in division (E) of this section.* If a judge issues an order of that nature, the judge shall exclude from the room in which the testimony is to be taken every person except a person described in division (A)(3) of this section. The judge, at the judge's discretion, may preside during the giving of the testimony by electronic means from outside the room in which it is being given, subject to the limitations set forth in division (A)(3) of this section. To the extent feasible, any person operating the televising equipment shall be hidden from the sight and hearing of the child victim giving the testimony, in a manner similar to that described in division (A)(3) of this section. The defendant shall be permitted to observe and hear the testimony of the child victim giving the testimony on a monitor, shall be provided with an electronic means of immediate communication with the defendant's attorney during the testimony, and shall be restricted to a location from which the defendant cannot be seen or heard by the child victim giving the testimony, except on a monitor provided for that purpose. The child victim giving the testimony shall be provided with a monitor on which the child victim can observe, during the testimony, the defendant.

(Emphasis added.) R.C. 2945.481(C)(2).

> Division (E) in turn, states:

> For purposes of divisions (C) and (D) of this section, a judge may order the testimony of a child victim to be taken outside the room in which the proceeding is being conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the defendant due to

- 4 -

one or more of the following:

> (1) The persistent refusal of the child victim to testify despite judicial requests to do so;
>
> (2) The inability of the child victim to communicate about the alleged violation or offense because of extreme fear, failure of memory, or another similar reason;
>
> (3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying.

**{¶ 8}** The trial court reasoned that although (C)(1)(a) used mandatory language, a showing of necessity was constitutionally required and therefore, Division (C)(2) provided the framework for granting a motion for remote testimony by referring to the situations establishing unavailability set forth in Division (E). The trial court determined that because the victim had not alleged any of the potential bases for a finding of unavailability set forth in Division (E), the motion for remote testimony should be denied.

**{¶ 9}** On appeal, the child victim argues that Division (C)(1)(a) provides that if the proceeding is a prosecution of one of the listed offenses and the child is under the age of 13, "the judge upon motion of . . . the child victim's attorney . . . *shall order* the testimony of the child to be taken in a room other than the room in which the proceeding is being conducted . . . ." (Emphasis added.) The victim argues that the use of "shall" makes the granting of the motion mandatory if the age and offense criteria are met.

**{¶ 10}** Contrary to our dissenting colleague's characterization, the analysis that follows *does not turn on or analyze* the constitutionality of R.C. 2945.481, either on its face or as applied. It is understandable why the dissent addresses the potential constitutional issues presented by R.C. 2945.481 with respect to a defendant's confrontation rights, as the trial court based its decision denying the child victim's request on its conclusion that "a showing of necessity is constitutionally required" and on that

basis concluded that Division (C)(2)—when combined with Division (E)—"provides the framework from which to make the determination" under Division (C)(1). These important constitutional issues may need to be addressed in a future appeal, but unfortunately there is no such constitutional challenge regarding the *defendant's* confrontation rights presented in this interlocutory *victim's* rights appeal. As the Ohio Supreme Court reminded us in its recent decision in *State v. Carter*, we are limited to the actual arguments presented before us on appeal.

{¶ 11} In *Carter*, the defendant challenged the remote testimony by a key state witness by claiming it violated both his U.S. and Ohio Constitutional rights. In analyzing his claim, the high court focused only on a violation under the Sixth Amendment stating:

> Eli has not asked us to revisit our decision to interpret Article I, Section 10 in lockstep with the United States Supreme Court's interpretation of the Sixth Amendment. Instead, he relies almost exclusively on federal Sixth Amendment case law. Because neither party has argued for an independent reading of Article I, Section 10, we are constrained to review Eli's argument under the federal standard. *See State v. Burroughs*, 169 Ohio St.3d 79, 2022-Ohio-2146, 202 N.E.3d 611, ¶ 11.

*Carter*, 2024-Ohio-1247 at ¶ 34.

{¶ 12} Thus, in order for an appellate court to address a constitutional issue, it must be properly raised. We have held that if the constitutionality of a statute is not raised below, it cannot be raised for the first time on appeal.[1] *State v. Murphy*, 2021-Ohio-4541, ¶ 38 (12th Dist.). Here, the defendant, Wallace, did not object to the child victim's request to testify remotely, and she did not file a brief opposing remote testimony on constitutional

---

1. The trial court addressed the constitutional issue below sua sponte without either side having the opportunity to address the court's concerns as to whether the statute violated Wallace's constitutional right to confrontation.

- 6 -

grounds in this interlocutory appeal.[2]  And this is an interlocutory victim's rights appeal, not a direct appeal by a defendant.  Therefore, we are constrained to limit our analysis instead to answering the only question presented on appeal:  whether the trial court correctly interpreted and applied the text of R.C. 2945.481 as written.

{¶ 13} We begin our analysis by examining the express language of the statute. *State v. Waddell*, 1995-Ohio 31 (1995).   Because statutory interpretation is a matter of law, our review is de novo.  *State v. Garcia*, 2020-Ohio-3232, ¶ 13 (12th Dist.).  A court's "duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted."  *Pelletier v. Campbell*, 2018-Ohio-2121, ¶ 14.  The intention of the legislature is to be determined from the words used in the statute.  *Caldwell v. Whirlpool Corp.*, 2024-Ohio-1625 ¶ 13.  "Therefore, '[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact.'"  *Id.*, quoting *Slingluff v. Weaver*, 66 Ohio St. 621, (1902), paragraph two of the syllabus.

{¶ 14} To determine the legislature's intent through its chosen words, we first read words and phrases in context and construe them according to rules of grammar and common usage.  *State ex rel. Steele v. Morrissey*, 2004-Ohio-4960, ¶ 21.  We give words their plain, ordinary meaning—unless the legislature has clearly expressed a contrary intention.  *In re Application of 6011 Greenwich Windpark, L.L.C.*, 2019-Ohio-2406, ¶ 19.

{¶ 15} In statutory construction, the word "may" is to be construed as permissive and the word "shall" is to be construed as mandatory" unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary

---

2. The state filed an "appellee brief" in which it argued that the trial court erred in failing to grant the motion. However, the state did not file a notice of appeal in the case, and as an appellee, was required to file a notice of cross-appeal if it sought to argue to change the trial court's order.  *See* App.R. 3(C)(1).

usage." *State ex rel. Adams v. Harris*, 2024-Ohio-4640, ¶ 71.

{¶ 16} Furthermore, it is a basic rule of statutory construction that none of the words used in a statute should be ignored. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 2002-Ohio-4172, ¶ 26. Instead, the language "'must be construed as a whole and given such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.'" *Id.*, quoting *State ex rel. Myers v. Bd. of Edn.*, 95 Ohio St. 367, 372-373, (1917).

{¶ 17} The child victim's motion was filed pursuant to Division (C)(1)(a). Division (C)(1)(a) states that if a motion is filed by a child victim under the age of 13 and the offense is one of the enumerated offenses, "the judge . . . *shall* order the testimony of the child victim to be taken in a room other than the room in which the proceeding is being conducted . . . ." (Emphasis added.) R.C. 2945.481(C)(1)(a).

{¶ 18} Likewise, Division (C)(1)(b) states that if a child victim is under the age of 18 and not otherwise eligible for protection under Division (C)(1)(a), "upon a showing by a preponderance of the evidence that the child will suffer serious emotional trauma if required to provide live trial testimony, the judge *shall* order that the testimony of the child victim be taken in a room other than the room in which the proceeding is being conducted." (Emphasis added.) R.C. 2945.481(C)(1)(b).

{¶ 19} Division (C)(2), however, states that "[t]he judge *may* issue the order upon the motion . . . filed under this section [that is, R.C. 2945.481], if the judge determines that the child victim is unavailable to testify in the room in which the proceeding is being conducted in the physical presence of the defendant, for one or more of the reasons set forth in division (E) of this section." (Emphasis added.) R.C. 2945.481(C)(2). In addition to setting forth three possible reasons a court "may" find a child victim "unavailable,"

Division (E) states that it applies "[f]or purposes of divisions (C) and (D) of this section." "Section," here, is a reference to R.C. 2945.481.

{¶ 20} The question, then, is whether the phrase "[f]or purposes of divisions (C) and (D)" as used in Division (E) means that Division (E) applies to and adds criteria to Divisions (C)(1)(a), (C)(1)(b), and (C)(2) alike, or instead only applies to Division (C)(2), which is the only one of the three relevant divisions of R.C. 2945.481 that specifically refers to Division (E). This second option reads "[f]or purposes of divisions (C) and (D)" as not referring to the specific criteria set forth in the specific divisions in (C) and (D), but as referring to the general topic of remote testimony addressed in (C) and (D).

{¶ 21} A problem arises when analyzing this question. The problem is that if Division (E) applies to all three relevant divisions of R.C. 2945.481, then Division (C)(1)(b) and Division (E) when read together *would require a court to apply two different burdens of proof to the same question*: whether a child would suffer "serious emotional trauma" if forced to testify in person. Division (C)(1)(b) applies a "preponderance of the evidence" standard to that question, while Division (E) applies a lesser "substantial likelihood" standard. This makes no sense. And, of course, this is in addition to the problem that if Division (E) is read as applying to Divisions (C)(1)(a) and (C)(1)(b), then "shall" as used in those divisions is to be read as discretionary, not mandatory.

{¶ 22} But these problems are avoided if the three relevant divisions are read as presenting three different scenarios for a judge to order a child victim's testimony to be taken remotely.

{¶ 23} First, Division (C)(1)(a) applies in the scenario in which the prosecution, the child victim, or the child victim's attorney moves for remote testimony by the child victim, the child victim is under 13, and the offense is one of the offenses enumerated in Division (A)(2)(a). In this scenario the judge "shall" order remote testimony.

**{¶ 24}** Second, Division (C)(1)(b) applies in the scenario in which the child victim is "not otherwise eligible for the protections provided for in division (C)(1)(a)," the prosecution, the child victim, or the child victim's attorney moves for remote testimony by the child victim, the child victim is under 18, and the court determines by a preponderance of the evidence that the child will suffer serious emotional trauma by testifying. In this scenario the judge "shall" order remote testimony.

**{¶ 25}** Third, the language in Division (C)(2) that we italicized in ¶ 7 above applies in the scenario in which the prosecution, the child victim, or the child victim's attorney moves for remote testimony by the child victim, the child victim is under 18, and the judge determines the child is "unavailable" for any of the three reasons listed in Division (E). In this scenario the judge "may" order remote testimony.

**{¶ 26}** The language in Division (C)(2) italicized in ¶ 7 above is preceded and followed by language—*not* italicized in ¶ 7 above—that concerns the procedure and logistics for a child victim to testify in another room regardless of whether (C)(1)(a), (C)(1)(b), or (C)(2) and (E) apply. Admittedly it is odd that the legislature structured R.C. 2945.481 in this manner. And on first review, it may be tempting to conclude, as the dissent does, that Division (E) applies to Division (C)(1)(a), rendering "shall" as discretionary rather than mandatory. But while the dissent is correct to note that "shall" is sometimes not to be construed as mandatory if "there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage," *Adams*, 2024-Ohio-4640 at ¶ 71 (12th Dist.), no such "clear and unequivocal legislative intent" can be discerned in R.C. 2945.481. In other words, while the statute is written in a confusing manner, confusing legislative drafting alone is not "clear and unequivocal legislative intent" that "shall" is to be read as "may." If the General Assembly intended to apply the Division (E) criteria to Division (C)(1)(a) when it amended R.C. 2945.481 in

2023 (*see* 2023 S.B. 16), it can amend the statute to make this clear.

**{¶ 27}** Until such an amendment is made, the interpretation of the statutory language provided above—that is, reading Divisions (C)(1)(a), (C)(1)(b), and (C)(2) as applying to three different scenarios—gives effect to every word and clause in R.C. 2945.481, and treats no part of the statutory language as superfluous, meaningless, or inoperative. *D.A.B.E., Inc.*, 2022-Ohio-4172 at ¶ 26. This approach also treats the word "shall" in Divisions (C)(1)(a) and (C)(1)(b) as mandatory according to the word's ordinary usage, which we must do because there is no clear and unequivocal legislative intent to the contrary. While the dissent's interpretation of the statute presents a reading that might be reasonable when viewed as a matter of policy, we conclude that the dissent's reading attempts to fix a drafting problem by ignoring language in the text of the statute, rather than applying that text as written. We cannot do this, and instead apply the text as written.

**{¶ 28}** Accordingly, we find that the trial court erred in denying the child victim's motion because the court misapplied R.C. 2945.491 by applying the incorrect Division (E) statutory standard to the child victim's Division (C)(1)(a) motion. We do not fault the trial court for this error, as the court was wrestling with a poorly worded statute in what appears to be a case of first impression under the recently-amended R.C 2945.481.

**{¶ 29}** We therefore sustain the child victim's assignment of error, reverse the trial court's denial of the child victim's request to testify remotely under R.C. 2945.481(C)(1)(a), and remand for the trial court to decide the child victim's motion, applying the interpretation of the statute we have described above. We express no opinion at this time as to how the trial court should address future motions that may be filed with respect to remote testimony in this case. Likewise we express no opinion at this time as to how the constitutional issues discussed in the dissent should be addressed if properly presented in a future appeal.

{¶ 30} Judgment reversed and remanded for further proceedings.

HENDRICKSON, J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 31} Because my colleagues reverse on appellants' assignment of error, I respectfully express my dissent. Unlike my colleagues, I would affirm the trial court because the underlying intent behind R.C. 2945.481(C) clearly and unequivocally supports the trial court's decision.[3]

{¶ 32} Preliminarily, my colleagues misunderstand the trial court's discussion of *State v. Carter*, 2024-Ohio-1247. The trial court was determining how the constitutional rights of an accused are to be considered when interpreting the various provisions in R.C. 2945.481. Likewise, the majority misunderstands the dissent in suggesting that it offers an analysis of the statute as being unconstitutional either on its face or as applied. *See above* at ¶ 10-13. Federal and state constitutional provisions are pertinent because, in a de novo review, understanding statutory intent is paramount.

{¶ 33} There is no dispute that the child was less than 13 years old, or that the offense at issue qualifies as an offense of violence. There is also no dispute that R.C. 2945.481 is the applicable statute. In this case, however, the appellants have asked us to apply only a single, more general portion of the statute, without examining the remaining subsections and other divisions referenced within that statute. The question therefore becomes: If a motion requests application of R.C. 2945.481, what is required

---

3. My reference to the plural "appellants" is referring to both the state and I.W. because their arguments are identical.

- 12 -

before a trial court orders testimony from a remote location outside the presence of an accused? Appellants argue "nothing" needs to be determined because R.C. 2945.481(C)(1)(a) plainly reads that upon a motion, the trial court "shall order" the testimony be given remotely. But, if nothing more needs to be determined, appellants are asking this court to ignore the remainder of R.C. 2945.481(C).

{¶ 34} Contrary to appellants' argument, R.C. 2945.481(C)(1)(a) alone does not provide the details of such a motion and order; other provisions within R.C. 2945.481 provide those necessary details. For instance, R.C. 2945.481(C)(2) plainly indicates that a motion "under this division," which is a reference to division (C), has specific time constraints. Subsection (C)(2) also refers to division R.C. 2945.481(A)(3) and provides guidelines as to how the remote proceeding is to take place.

{¶ 35} The state's interest in protecting children who are needed to testify is not new. *See In re Howard*, 119 Ohio App.3d 33, 37-38 (12th Dist.1997) (noting that child victims of sexual abuse may, "under certain circumstances," override the accused's right to confront his or her accuser in court). To compromise an accused's constitutional right to confront and cross-examine witnesses, R.C. 2945.481(C)(2) requires the trial court to determine the child victim is "unavailable to testify . . . in the physical presence of the defendant, for one or more reasons set forth in division (E) of this section."[4] This complies with the Ohio Supreme Court's recent decision in *State v. Carter*, a decision in which Justice DeWine noted that, pursuant to United States Supreme Court precedent, "a trial judge may only dispense with the requirement of face-to-face confrontation in *narrow circumstances*." (Emphasis added.) *Id.*, 2024-Ohio-1247 at ¶ 2, referring to *Maryland v. Craig*, 497 U.S. 836 (1990).

---

4. In order for R.C. 2945.481(E) to be "of this section," it is clear that the word "section" references all of R.C. 2945.481 in its entirety.

{¶ 36} In *Craig*, Justice Scalia articulated that, while face to face confrontation was a constitutional right, it is also not absolute. Simultaneously, Justice Scalia noted that it "may not be easily dispensed with." *Id.* at 850. There must be an adequate showing of necessity, and that "requisite finding of necessity must of course be a case-specific one." *Id.* at 855. The Ohio Supreme Court in *Carter*, and the trial court herein, rightfully acknowledged the need for "sufficient findings" as plainly written in R.C. 2945.481. This explains why, when making its recent amendment to the statute, the General Assembly did not change R.C. 2945.481(F)(2), which clearly applies to (C) despite the majority's holding otherwise.

{¶ 37} I.W.'s motion was filed in a timely manner, but did not reference R.C. 2945.481(E) or any of the reasons why a child's physical presence and testimony should be given remotely. Thus, I.W. did not provide any argument as to why his presence in the courtroom outweighed the interests provided to the accused under the Confrontation Clauses found in the Sixth Amendment to the United States Constitution or Article I, Section 10 of the Ohio Constitution. *See Carter* at ¶ 55-68 (Fischer, J., concurring) (noting that the Confrontation Clause set forth in Article 1, Section 10 of the Ohio Constitution may provide even further protections than those provided by the Confrontation Clause of the Sixth Amendment to the United States Constitution). The General Assembly clearly and unequivocally subjected R.C. 2945.481(C) to the latter division (E). In fact, division (E) begins, "For purposes of divisions (C) and (D) . . . ." That is to say, R.C. 2945.481(E) exists for the purposes of both subsections found in (C). Therefore, contrary to what my colleagues are asserting, the divisions of R.C. 2945.481 are integrated and must be read as intended—complimenting one another.

{¶ 38} A further illustration of the General Assembly's intent that the divisions be read in conjunction to one another, is R.C. 2945.481(F)(2), which plainly states that:

[a] judge who makes any determination regarding . . . the taking of testimony outside the room in which a proceeding is being conducted *under division (C)* . . . of this section, *shall enter the determination and findings* on the record in the proceedings.

(Emphasis added.)

It is undeniable that appellants, and my colleagues, are suggesting the trial court should have ordered the testimony to be given remotely pursuant to R.C. 2945.481(C) without applying the remainder of (C) and (F)(2). A construct that permits appellants, and my colleagues, from reviewing only (C)(1) without examining the remainder of (C) is unexplainable and creates a lopsided, unworkable, and unsupported interpretation of the statute.

{¶ 39} If the majority's suggestion is a matter of law, then nothing more than R.C. 2945.481(C)(1)(a) is needed. That is to say, if the General Assembly intended to abrogate R.C. 2945.481(C)(2), (E), and (F)(2) it should have said so. It did not. If the General Assembly intended R.C. 2945.481(E) to be upon the trial court's own motion, it could have said so. Again, it did not. The only way to find R.C. 2945.481(C)(1)(a) to be unambiguous is to look at its language out of context from the rest of the statute, and then interpret the remainder of the statute to not be implicated. That is simply not how statutory interpretation works. To hold otherwise, like my colleagues do in this case, is plainly incorrect.

{¶ 40} My colleagues accept appellants' argument that the preliminary use of the word "shall" in R.C. 2945.481(C)(1) is an unyielding, mandatory "shall," while the rest of the statute is inconsequential baggage. We are asked to read (C)(1) and read no further. The suggestion that R.C. 2945.481(C)(1) is expressly intended to be read in *isolation* and *out of context* from (C)(2), (E), and (F)(2) is misguided and is expressed nowhere within the statute. Such a proposition, when weighing a criminal constitutional right against a

statutory procedural right, should be untenable. It is only by harmonizing the various divisions within R.C. 2945.481 that we observe how the General Assembly provided safeguards in protecting a criminal defendant's due process. Evidentiary procedures may marginally infringe upon fundamental constitutional rights in criminal proceedings, but only after certain determinations are made. Hence, the General Assembly's passage of R.C. 2945.481(C)(2), (E) and (F)(2).

{¶ 41} Appellants choose to ignore any analysis or discussion of division (E) or (F)(2). My colleagues also fail to discuss (F)(2) and circumvent (E). This is a regrettable exercise. As is well established, the word "shall" is not always mandatory. *See, e.g., Lovejoy v. Deil*, 2021-Ohio-1124, ¶ 33 (12th Dist.) ("[t]he Ohio Supreme Court 'repeatedly ha[s] recognized that the use of the term 'shall' in a statute connotes a mandatory obligation unless other language evidences a clear and unequivocal intent to the contrary'"), quoting *Wilson v. Lawrence*, 217-Ohio-1410, ¶ 13. Sometimes the obligation, or suggested duty, emanating from the word "shall" is contingent upon circumstances evident in the other wording within the statute. That is the case here.

{¶ 42} Furthermore, the reading of a statute aims to find consistency, not inconsistency. *See Meadowwood Manor, Inc, v. Ohio Dept. of Health*, 2007-Ohio-2067, ¶ 21 (12th Dist.) ("statutes relating to the same general subject matter must be read in pari materia and courts should construe statutes relating to the same subject matter as consistent rather than inconsistent"). Our role is to harmonize provisions in a statute when possible. *See State v. Cain*, 2024-Ohio-2969, ¶ 15 (12th Dist.) (noting that, in cases of statutory construction, "the court's 'paramount concern is the legislative intent,'" which can be determined by examining the language used and the purpose to be accomplished by evaluating "the statute as a whole," giving such interpretation "as will give effect to

every word and clause in it"), citing *Boley v. Goodyear Tire & Rubber Co.*, 2010-Ohio-2550, ¶ 20-21.

**{¶ 43}** Additionally, any ambiguity or uncertainty in a statute permits the use of in pari materia to examine statutory construction in order to ascertain the General Assembly's legislative intent. *See State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 2017-Ohio-8714 (in pari materia is used where doubt or ambiguity exists in the wording of a statute and the wording is capable of more than one meaning); *Bauer v. Grange Mut. Casualty Co.*, 33 Ohio App.3d 145, 148 (12th Dist.) ("[s]tatutes and subsections within the same chapter of the Revised Code should be read in pari materia with one another . . . so as to fully effectuate the General Assembly's intent . . . ."). The application of in pari materia to this case makes clear that the General Assembly deliberately left R.C. 2945.481(C)(2), (E), and (F)(2) in place so as to pass constitutional scrutiny while at the same time protecting the child as a confronting witness of the accused.

**{¶ 44}** For the reasons expressed above, I find, unlike my colleagues, that R.C. 2945.481(C)(1), (C)(2), (E) and (F)(2) can be read in harmony. When reading the different provisions, they reveal the General Assembly's legislative intent. The intent is clear: to provide safety, security, and protection to a child of tender years when testifying against the accused while providing sufficient protection for an accused's fundamental right to confront and cross-examine witnesses against him or her.

**{¶ 45}** The only way to find R.C. 2945.481(C)(1)(a) to be unambiguous is to look at its language out of context from the rest of the statute and then interpret the rest of the statute addressing the same subject matter to be irrelevant. My colleagues' interpretation suggests the General Assembly intended to abrogate the United States Supreme Court decision in *Craig,* which it has no authority to do. *See State v. Gardner*, 2008-Ohio-2787,

¶ 76 (the Ohio Supreme Court noting that "[w]e are, of course, free to determine that the Ohio Constitution confers greater rights on its citizens than those provided by the federal Constitution, and we have not hesitated to do so in cases warranting an expansion"). Construing the statute as the majority does is not supported by any precedent or rule of statutory construction and offends the need for "sufficient findings" as articulated by the Ohio Supreme Court in *Carter*. Therefore, upon my de novo review I find the intent of R.C. 2945.481(C) clearly and unequivocally supports the trial court's decision and I respectfully dissent.